UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROBERT E. LEVY,

    Plaintiff,

v.

COUNTY OF ALPINE, et al.,

    Defendants.

No. 2:13-CV-02643-RHW-DB

**ORDER DIRECTING VERDICT**

On April 17, 2017, this matter began in a jury trial. Plaintiff Robert E. Levy rested his case-in-chief on April 20, 2017, and at that time, Defendant County of Alpine moved for a directed verdict pursuant to Fed. R. Civ. P. 50. This Order memorializes the Court's oral ruling granting Defendant's Motion for Directed Verdict.

## **BACKGROUND**

Plaintiff Levy, former Undersheriff of Alpine County, brought this case against Alpine County, charging it with violations of his First Amendment right to

**ORDER DIRECTING VERDICT -** 1

free speech, age discrimination, retaliation, and defamation. ECF No. 1. On March 10, 2016, the Court dismissed all claims except the claim under 42 U.S.C. § 1983 for deprivation of First Amendment rights. ECF No. 44.

The surviving claims were divided into two separate jury instructions seeking recovery against the County on two theories. The first sought recovery against the County for the retaliatory acts of its County Administrative Officer as a final policymaker. The second sought recovery from the County itself as a final policymaker for ratifying the retaliatory acts of its County Administrative Officer.

In 2012, at the recommendation of County Administrative Officer Pamela Knorr, the Board of Supervisors authorized an independent investigation into a telecommunications project at Leviathan Peak in Alpine County, in which Mr. Levy was involved. The investigation, conducted by a third-party law firm, resulted in a report of the findings that demonstrated significant financial shortfalls in the project. The report was published on the County's website.

Mr. Levy alleges the report's publication irreparably damaged his reputation in the community. This, he asserts, forced him to retire earlier than planned and made it impossible for him to be elected Sheriff. Mr. Levy further alleges that the recommendation by Ms. Knorr was made to the Board of Supervisors in retaliation for complaints Mr. Levy claims he made about age discrimination.

The elements of each theory of liability, as a practical matter, were factually and legally the same. Both required the Court to determine as a matter of law that the actors were final policymakers, that they acted with retaliatory intent, that Mr. Levy's speech was protected, and that an adverse employment action was taken against Mr. Levy. *See Eng v. Cooley*, 552 F.3d 1062, 1070-74 (9th Cir. 2009) (test for First Amendment retaliation)

Defendant's Motion for Directed Verdict challenged that Ms. Knorr was, as a matter of law, a final policymaker, and also challenged the evidentiary basis presented to show liability through ratification by the Board of Supervisors.

## **DISCUSSION**

A directed verdict is appropriate when a party has been fully heard on an issue in a jury trial and the trial court finds that a reasonable jury would not have a legally sufficient evidentiary basis for finding for the party on that issue. FED. R. CIV. P. 50(a).

**A. The Board of Supervisors did not approve the recommendation for the investigation with a retaliatory motive.**

In a § 1983 suit, the plaintiff must establish the state of mind required to prove the underlying violation. *Bd. of Cnty. Comm'rs of Bryan County*, *Okla. v. Brown*, 520 U.S. 397, 405 (1997); *see also TSAO v. Desert Palace, Inc.*, 698 F.3d 1128, 1144 (9th Cir. 2012). To demonstrate ratification of a subordinate's

unconstitutional action, thus holding the municipality liable, the plaintiff must prove that the final policymakers approved a subordinate's decision *and* the unconstitutional basis for it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis added).

The Alpine County Board of Supervisors is a final policymaker under state law, as it is the governing body of the County. *See* Cal. Gov. Code § 25000. To succeed in his claim, Mr. Levy would have needed to prove that the Board of Supervisors approved an underlying retaliatory motive against Mr. Levy when the Board chose to approve Ms. Knorr's recommendation for the independent investigation into the project. Mr. Levy presented no evidence that a retaliatory motive was involved in the Board's decision-making, and thus fails in this claim.

**B. Pamela Knorr was not a final policymaker with respect to any actions that allegedly harmed Mr. Levy.**

To determine whether a public official is a final policymaker, the Court looks first to state law. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989). Authority may be granted directly by legislation, or it may be delegated by a body possessing such authority. *Pembauer v. Cincinnati*, 475 U.S. 469, 483 (1986).

Mr. Levy claimed that Ms. Knorr was a final policymaker because the Board of Supervisors delegated to her the authority to make investigations and to make final recommendations to the Board. He contends that the action of Ms. Knorr in

contracting with an outside law firm to do the investigation prior to Board approval makes her the final policymaker with respect to the investigation.

Whether Ms. Knorr is the final policymaker for these duties is a question of law for the Court to decide. *Praprotnik*, 485 U.S. at 124. In making that decision, the Court considered California law and the County Ordinance that created the County Administrative Officer position and delineated her powers and duties. *See* Alpine Cnty., Cal., Ordinance No. 677-07 (Aug. 21, 2007) (hereinafter "Ord. 677-07"). Included in the duties of the County Administrative Officer are: the authority to analyze and develop policy alternatives (Ord. 677-07, Sec. 3A); the authority to make investigations into the affairs of the county, including proper performance of any contract (Ord. 677-07, Sec. 3J); and the authority to make recommendations to the Board of Supervisors regarding measures he or she deems necessary (Ord. 677-07, Sec. 4B).

Separate from Ord. 677-07, the Court considered certain evidence and conclusions from that evidence as relevant to the policymaker issue because a municipality may, by custom or delegation, as opposed to written policy, convert an individual into a final policy maker. *Praprotnik*, 485 U.S. at 127.

Pursuant to her job duties as described in Ord. 677-07, Ms. Knorr made her own investigation into the history of the Leviathan Peak project and, from this, provided a recommendation to the Board regarding the authorization of an

independent investigation into the project. The recommendation was contained in a written report and described two alternatives: initiate an investigation or not. Trial Exhibit B. Ms. Knorr strongly recommended that the investigation be authorized. *Id.* Prior to presenting the recommendation to the Board, Ms. Knorr contacted the law firm and arranged for it to do the work for the investigation.

The Board considered the recommendation at a closed meeting. After discussion and dissent, it voted 3-2 to authorize the investigation. There were no other instances in which the County Administrative Officer had hired an outside investigator in similar circumstances from which a custom or practice could be established. The ultimate bill from the law firm was estimated at $100,000. The County Administrative Officer was required by Ord. 677-07 to expend funds within the budget or seek approval from the Board. Ord. 677, Sec. 3 F-H. Thus, she could not have bound the County to pay the outside law firm the required fees without approval of the Board. By taking a vote on the recommendation, the Board asserted that it was the final policymaker with respect to the initiation of the outside investigation. If the vote had not adopted the recommended action, the investigation would not have been done, even though the law firm had been contacted previously by Ms. Knorr. The Board was required to publish the results of the investigation as part of its public notice of agenda items when it decided to discuss the report at an open Board meeting. Cal. Gov. Code § 25150.

From Ord. 677-07 and these factual findings, the Court concludes as a matter of law that Ms. Knorr was not a final policymaker as to the investigation and publication of the results of the investigation. The Board was the final policymaker for these acts.

Whether Ms. Knorr was a final policy maker in making the *recommendation* to the Board under her assigned job duties is doubtful because her recommendation needed the Board's approval. Although the legal authority is not uniform, the Court believes the reviewability of her recommendation defeats the claim that she is a final policymaker. *See, e.g., Adkins v. Bd. of Ed. of Magoffin Cty., Ky.*, 982 F.2d 952 (6th Cir. 1993); *Purdy v. Town of Greenburgh*, 178 F.Supp.2d 439 (S.D.N.Y. 2002).

However, even if Ms. Knorr was the final policymaker with respect to her recommendation, she was not vested with the final policymaking authority with respect to that which Mr. Levy alleges caused his injury. Mr. Levy failed to provide any evidence as to how the recommendation alone caused him any harm. Rather, his alleged harm flows from the investigation and subsequent publication of the findings, for which Ms. Knorr was not a final policymaker.

**C. Mr. Levy fails to demonstrate an adverse employment action.**

Mr. Levy proposes three actions that he alleges are adverse employment actions: (1) the investigation and publication of the report; (2) a conversation Ms.

Knorr had with former Sheriff John Crawford in which she suggested that Mr. Levy should retire and referenced potential challenges to his pension; and (3) statements made by Ms. Knorr to her former assistant Beth Nunes that Ms. Knorr was "going after Rob." Each fails to be categorized properly as adverse employment actions.

As discussed above, there is no evidence that the Board acted with improper motive in ordering the investigation and publishing the findings. Even if the Board had been aware of Ms. Knorr's unconstitutional motive (of which there is no evidence), it would have been required to act on the information presented and decide if further investigation was warranted. The Board had a duty to investigate claims of financial concerns with contracts and projects within its jurisdiction.

Further, the publication of the findings amount to public speech, and the County's interest in its public speech would outweigh Plaintiff's interest in his speech in this instance. *See Pickering v. Bd. of Ed. Of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968) (balancing test between employer's legitimate administrative interests versus the employee's First Amendment rights). The financial information contained in the report was a matter of public interest, and the Board of Supervisors had a duty to provide the information to the public for comment. *See* Cal. Gov. Code § 54954.3.

Additionally, the investigation was directed at a county construction project in which Mr. Levy was involved, which is very different from a personnel investigation or other type of direct employment action. The ordering of an investigation into a construction project is not an adverse employment action merely because an employee was involved and that it could be anticipated that the employee would be criticized. This general project investigation is not the type of action that would chill the speech of a reasonable employee, particularly on an unrelated matter. *See generally Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (providing test for adverse employment action and describing examples).

The second alleged adverse employment action is a conversation between Ms. Knorr and Sheriff Crawford. First, the contents of the conversation was not the type that would chill free speech. *See generally Coszalter*, 320 F.3d at 975. More importantly, however, Mr. Levy never presented evidence that the private conversation between Sheriff Crawford and Ms. Knorr was ever communicated to him. Mr. Levy cannot prove that he was chilled in his speech if he was unaware of the conversation.

The last alleged adverse employment action was comprised of comments by Ms. Knorr to Ms. Nunes that she was "going after Rob," which also do not constitute an adverse employment action. *See Nunez v. City of Los Angeles*, 147

F.3d 864, 875 (9th Cir. 1998) (holding that mere bad-mouthing and verbal threats were insufficient to sustain a § 1983 retaliation claim). Moreover, the statements occurred somewhere between October 2011 and February 2012, per Ms. Nunes's testimony. The alleged retaliatory action (i.e. Ms. Knorr's recommendation to the Board) did not occur until August 2012, and thus the statements lack temporal proximity to the alleged retaliation.

Finally, Mr. Levy failed to prove that his decision to retire early was the result of any of the alleged adverse employment actions. Essentially, Mr. Levy presents a theory of constructive discharge. While a decision to retire under certain, intolerable circumstances can result in constructive discharge, the facts of this case do not support such. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 941 (9th Cir. 2009). For constructive discharge, a plaintiff must demonstrate that "a reasonable person in [his] position would feel he had no choice but to retire." *Id.* at 941 (quoting *Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996)). This is examined under an objective standard. *Id.* Here, Mr. Levy cites to a series of events that occurred nearly three years prior to his decision to retire. Even Ms. Knorr, who Mr. Levy claims was at the heart of the alleged retaliation, resigned from the County well before Mr. Levy's retirement. Mr. Levy also admitted that he stayed in his position longer for retirement benefit purposes. In

sum, Mr. Levy failed to demonstrate an intolerable working situation that would have forced a reasonable employee to have no option other than resignation.

## **CONCLUSION**

Based on the review of the legal precedents, the arguments presented by the parties at trial, and the evidence presented at trial, the Court finds good cause to **GRANT** Defendant's motion.

Accordingly, the Motion for Directed Verdict pursuant to F<small>ED</small>. R. C<small>IV</small>. P. Rule 50 is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to enter **JUDGMENT** in favor of the Defendant.

**DATED** this 25th day of April, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge